UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

ANGELA MICHELE ACTON,               )
                                    )
            Plaintiff,              )
                                    )          No. 4:10-cv-82
v.                                  )
                                    )          *Mattice / Lee*
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
            Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Angela Michelle Acton brought this action pursuant to 42 U.S.C. §§ 405(g) seeking

judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying her supplemental security income ("SSI") and disability insurance benefits

("DIB"). Plaintiff alleges the Administrative Law Judge ("ALJ") erred in determining Plaintiff

could perform light work, failed to properly consider the combined effect of Plaintiff's impairments,

and improperly rejected the opinion of Plaintiff's treating physician. Both Plaintiff and Defendant

have moved for judgment on the record. For the reasons stated below, I **RECOMMEND** that (1)

Plaintiff's motion for judgment on the administrative record [Doc. 12] be **DENIED**; (2) the

Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**; and (3) the decision of

the Commissioner be **AFFIRMED**.

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff initially filed her application for SSI on November 3, 2006, alleging disability as

of February 4, 2004 (Transcript ("Tr.") 99-101). Plaintiff's claim was denied initially and upon

reconsideration and she requested a hearing (Tr. 53-62, 68-69). The ALJ held a hearing on May 5,

2009, during which Plaintiff was represented by an attorney (Tr. 23-48). The ALJ issued his

decision on July 24, 2009, and determined Plaintiff was not disabled because there were jobs she could perform in the national economy (Tr. 11-22). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3). Plaintiff filed the instant action on November 30, 2010 [Doc. 2].

## II.    FACTUAL BACKGROUND

### A.    Education and Background

Plaintiff was 40 years old, a younger individual, at the time of the hearing and was 41 when the ALJ issued his decision (Tr. 27). Plaintiff had completed high school and last worked at Wal-Mart in 2004 (Tr. 29-30). Plaintiff testified at the hearing that she injured her right hip at work in December 2003, which caused her to experience problems standing for long periods of time and, as a result, was prescribed pain pills (Tr. 30). Plaintiff also experienced problems standing because of a knee injury that occurred in June 2003, but she had not received treatment for her knee pain (Tr. 30-31, 38). Plaintiff testified she asked about knee replacement surgery and was told it would not help (Tr. 31). Plaintiff had problems with both feet because her toes ached; the toes on her right foot had started going numb two years prior (Tr. 31). Plaintiff testified to pain in her lower back that began when she hurt her hip, which was also treated with pain medication (Tr. 31-32). In addition, Plaintiff had high blood pressure that was generally controlled by medication (Tr. 32).

Plaintiff testified she did not sleep well because of stress and worry (Tr. 32-33). Plaintiff did her own grocery shopping but the grocery shopping wore her out and she needed help getting the groceries out of the car and put away, she performed housework with help from her niece, and she did laundry (Tr. 33-34, 39). Plaintiff tried to exercise occasionally by walking up and down her driveway (Tr. 34). Plaintiff had no problems with personal care and getting dressed, and spent most

2

of the day sitting and watching television (Tr. 34). Plaintiff testified she did not have problems sitting, but would have to change position so she did not become stiff (Tr. 35). Plaintiff could not stand for more than 15 minutes in one spot, and she could not walk for more than 10 to 15 minutes before she needed to rest (Tr. 35). Plaintiff testified she could only lift 10 pounds and could not bend over to do any lifting from a low area (Tr. 35). Plaintiff stated she had pain every day, which she rated as a seven on a 10-point scale without medication (Tr. 41). Her pain medication helped, but Plaintiff only took it at night because she did not want to drive after taking hydrocodone (Tr. 40-41). Plaintiff's pain became worse with cold weather and rain, she had vitamin deficiencies, she was tired most of the time, and felt drained (Tr. 41-42).

### B. Medical Records

Plaintiff began seeing Dr. Brad Blankenship in June 2003 with complaints of right knee pain and swelling (Tr. 270). On December 16, 2003, Plaintiff reported she had hurt her hip two weeks prior and it had recently gotten worse; as a result, her hip was hurting and her right leg was tight and sore (Tr. 201). It appears Plaintiff missed later appointments and did not return to Dr. Blankenship until September 2004 (Tr. 265-69), when she again complained of knee pain, high blood pressure, and had a ganglion cyst on her wrist (Tr. 265). Plaintiff saw Dr. Blankenship on October 26, 2004, November 12, 2004, March 25, 2005, August 18, 2005, December 1, 2005, February 23, 2006, and June 16, 2006 for high blood pressure treatment and medication refills, but missed other scheduled appointments (Tr. 237-38, 248-63).

Plaintiff complained of bilateral knee pain during a September 21, 2006 visit and her hypertension was not well controlled at the time (Tr. 247). Dr. Blankenship scheduled Plaintiff for a CT scan and an MRI (Tr. 246). On September 28, 2006, Plaintiff had a CT scan of her lumbar

3

spine, which showed mild disc space narrowing; an MRI of her right knee, which showed mild to moderate cartilaginous thinning and mild chondromalacia patella but was otherwise unremarkable; and an MRI of the left knee, which showed mild cartilaginous thinning and mild chondromalacia patella but was otherwise unremarkable (Tr. 279-81). During an October 11, 2006 visit with Dr. Blankenship, he noted Plaintiff's hypertension was well controlled and the MRI scans showed mild chondromalacia patella in both knees (Tr. 243).

On December 13, 2006, Timothy Fisher, D.O. opined that Plaintiff could perform jobs that would require standing and ambulating six to eight hours daily and could grip and manipulate objects weighing one to 15 pounds frequently and 15 to 40 pounds occasionally (Tr. 283-87). Dr. Fisher noted that Plaintiff's range of motion of her lumbar spine, hips, knees, ankles, feet, shoulders, elbows, wrists and hands was all normal, her straight leg raises were negative, she had no difficulty balancing or stepping from one leg and she was able to squat with mild difficulty (Tr. 286).

On January 5, 2007, Dr. James Millis completed a residual functional capacity ("RFC") assessment and opined Plaintiff could frequently lift up to 10 pounds and could occasionally lift up to 20 pounds; could stand and/or walk for six hours in an eight hour day, could sit for six hours in an eight hour day, and was unlimited in her ability to push or pull (Tr. 288-95). Dr. Millis noted that Plaintiff's alleged physical complaints were not fully credible because the evidence did not confirm a back or hip problem, and there was no medical evidence indicating a right foot problem (Tr. 293).

Plaintiff saw Dr. Blankenship on February 6, 2007, for medication refills and complained of hacking cough and insomnia due to a friend's suicide (Tr. 340-41). Plaintiff returned to Dr. Blankenship on April 16, 2007, for mole removal and complained of hip and foot pain (Tr. 310-11). Plaintiff had another MRI of her spine on April 20, 2007, which showed mild degenerative disc

disease and no evidence of significant spinal stenosis (Tr. 350).

On April 16, 2007, during a visit with Dr. Blankenship, Plaintiff noted her left foot was tender and swollen (Tr. 421-22). Plaintiff saw Dr. Jacqueline Aune Smith, a podiatrist, on April 23, 2007 and complained that her arches had been burning and hurting for the last six weeks (Tr. 297). Dr. Smith diagnosed Plaintiff with bilateral plantar bursitis associated with heel spurs and gave Plaintiff inserts and a prescription for Relafen (Tr. 297). Plaintiff returned to Dr. Smith on May 7, 2007 and May 21, 2007 and reported doing better and Dr. Smith made some adjustments to her inserts (Tr. 352).

Plaintiff visited Dr. Blankenship on April 30, 2007 for a reevaluation of her hip pain and to review tests (Tr. 335-36). Plaintiff saw Dr. Blankenship on June 14, 2007 for a medication refill and to follow up on lab results; she also received a shot of Vitamin B-12 (Tr. 332-33).

On July 3, 2007, Dr. James Gregory completed an RFC assessment and opined the same restrictions as Dr. Millis–frequent lifting of up to 10 pounds, occasional lifting of up to 20 pounds, standing and walking for up to six hours in an eight hour day, sitting for up to six hours in an eight hour day, and no limitations for pushing and/or pulling (Tr. 298-305). Dr. Gregory added the postural limitations that Plaintiff should never climb a ladder, rope, or scaffolds, and could only occasionally climb a ramp or stairs, balance, stoop, kneel, crouch, or crawl (Tr. 300).

During an October 31, 2007 visit with Dr. Blankenship, Plaintiff complained of bilateral knee pain and lumbar spine pain and received another B-12 shot (Tr. 319-21). Plaintiff continued to see Dr. Blankenship throughout 2007 and 2008 to evaluate her hypertension, for medication refills, and to receive B-12 shots (Tr. 313-17, 326-30, 379-99, 408-09, 411-12, 414-19, 421-22). A progress note from Dr. Blankenship on January 9, 2009 again indicated Plaintiff's ongoing problems

5

with hypertension, B-12 deficiency, and Vitamin D deficiency (Tr. 369). Plaintiff had a bone density test on January 16, 2009, which showed there was no statistically significant bone mineral loss on her lumbar spine or left femur (Tr. 368).

On May 1, 2009, Dr. Blankenship filled out an assessment of Plaintiff's ability to do work-related activities (Tr. 428-31). Dr. Blankenship stated that Plaintiff had bilateral hip pain radiating into her legs and bilateral knee pain, which caused soreness and stiffness; degenerative disc disease; low back pain; chronic fatigue; bilateral foot pain; and morbid obesity that was all evidenced by tests and examinations (Tr. 428). Due to these impairments, Dr. Blankenship opined Plaintiff could lift up to 10 pounds occasionally but could lift no amount of weight frequently; that heel spurs on both feet would impede Plaintiff's ability to walk, such that Plaintiff could walk less than two hours in an eight hour workday and could only walk 30 minutes at a time; that Plaintiff could sit for four to five hours in an eight hour workday, and could only sit 30 to 40 minutes at a time; and that Plaintiff should rarely climb ramps or stairs, balance, crouch, kneel, crawl, or stoop and could never climb ladders, ropes, or scaffolds (Tr. 428-29). Dr. Blankenship also opined Plaintiff's ability to reach, push, and pull would be limited because it would exacerbate her chronic pain (Tr. 430). Plaintiff had additional limitations in that she should not be exposed to heights, moving machinery, cold, or vibration, and Dr. Blankenship explained these limitations by noting that heights and moving machinery would be dangerous due to Plaintiff's slow mobility, the cold would affect her arthritic pain, and vibration would increase her pain (Tr. 430).

Plaintiff submitted additional medical records after the hearing and the ALJ's decision. The records reflect Plaintiff's new diagnosis of diabetes mellitus, possible diabetes-related neuropathy

in her toes, and progression of a heel spur (Tr. 436-51).[1]

## C.  Vocational Expert Testimony

The VE testified that Plaintiff's work history was primarily light, unskilled work and her most recent job at Wal-Mart would be classified as heavy, semiskilled work performed at the medium strength level (Tr. 45).  None of these jobs had any skills that would transfer to light or sedentary positions (Tr. 45).  The ALJ posed a hypothetical question to the VE and asked her to consider an individual who could perform a range of light work, but with only occasional climbing, stooping, bending, crouching, crawling or kneeling and the opportunity to alternate between sitting and standing as necessary for comfort (Tr. 45).  The VE testified that none of Plaintiff's past relevant work would apply to such an individual, but the VE identified three jobs that an individual with those limitations could perform–cashier at a service station or movie theater, with 65,000 jobs in the state and one million nationally; parking lot attendant, with 1,800 jobs in the state and 110,000 nationally; and ticket taker, with 2,300 jobs in the state and 102,000 nationally (Tr. 45-46).

Next, the ALJ asked the VE to consider the same limitations but to reduce the RFC to sedentary.  The VE identified assembly positions, with 17,500 jobs in the state and 85,000 nationally, or hand-packing positions, with 7,000 jobs in the state and 45,000 nationally, as possible jobs for such an individual (Tr. 46-47).  Finally, the ALJ asked the VE if there would be any jobs for an individual who could only lift up to 10 pounds occasionally, walk less than two hours in a

---

[1]  The United States Court of Appeals for the Sixth Circuit has held that additional evidence submitted to the Appeals Council after the ALJ's decision in claims where the Appeals Council declined to review the decision cannot be considered part of the record for substantial evidence review.  *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  A court can only remand the case for further proceedings in light of the additional evidence, if the evidence is new and material.  *Id.*

workday, sit four to five hours in a workday but for no more than 30-40 minutes at a time, rarely climb ramps or stairs and never climb ropes, ladders or scaffolds, rarely balance, crouch, kneel, crawl, or stoop, had limitations with reaching, pulling or pushing, and could not be exposed to unprotected heights, moving machinery, temperature extremes or vibrations (Tr. 47). The VE testified that there would be no jobs available for an individual with those limitations (Tr. 47).

In response to questions from Plaintiff's attorney, the VE testified if Plaintiff's testimony was found to be credible, there would be no jobs available, and that one to two absences per month on a routine basis would put an unskilled job at jeopardy (Tr. 47-48).

## III.     ALJ'S FINDINGS

### A.     Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to

show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**B.      ALJ's Application of the Sequential Evaluation Process**

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since February 4, 2004, the alleged onset date (Tr. 16). At step two, the ALJ found Plaintiff had "severe impairments" including: obesity, hip disorder, knee disorder, degenerative disc disease, and plantar bursitis (Tr. 16). The ALJ determined these impairments were severe because they imposed more than a minimal effect on Plaintiff's ability to perform basic work activity (Tr. 16). The ALJ noted that Plaintiff also suffered from hypertension but, because the evidence in the record and Plaintiff's testimony indicated the hypertension was well-controlled with medication, the ALJ found it was not severe (Tr. 16-17). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 17). More specifically, the ALJ found Plaintiff's physical impairments did not meet or medically equal the criteria of 1.02 or 1.00Q (Tr. 17). Next, the ALJ determined Plaintiff had the RFC to perform light work, but was limited to occasional climbing, stooping, bending, kneeling, crouching, and crawling, and must be able to sit or stand at will as necessary for comfort (Tr. 17). At step four, the ALJ found Plaintiff was unable to perform any past relevant work, that she was age 35, a younger individual, as of the alleged onset date, she had a high school education, and she was able to communicate in English (Tr. 21). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined there were jobs existing in significant numbers in the national economy which Plaintiff

could perform (Tr. 21). This finding led to the ALJ's determination that Plaintiff was not under a disability as of February 4, 2004 (Tr. 22).

## IV.    ANALYSIS

Plaintiff asserts three arguments to support her contention that the Commissioner's decision is not supported by substantial evidence. First, Plaintiff argues that the ALJ improperly determined Plaintiff could perform a reduced range of light work. Second, Plaintiff argues that the ALJ failed to consider the combined effect of her multiple impairments, including pain. Third, Plaintiff asserts the ALJ rejected the opinion of Plaintiff's treating physician when he should have given it controlling weight. I **FIND** the ALJ's decision, while not perfect, is supported by substantial evidence as explained below.

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve

conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. The ALJ's RFC determination

Plaintiff generally argues that the evidence in the record establishes that she cannot perform light work with limitations, sedentary work, or any work [Doc. 13 at PageID#: 38-39]. More specifically, she asserts an RFC for light work is inconsistent with the ALJ's determination of her credible limitations because light work involves lifting up to 20 pounds at a time, frequent lifting and carrying of up to 10 pounds, and a good deal of walking or standing or sitting with pushing and pulling. She argues the limitations imposed by the ALJ would prevent Plaintiff from performing

11

such light work activities. The Commissioner asserts Plaintiff's argument is irrelevant because the ALJ did not rely on the medical vocational guidelines to determine if Plaintiff could perform light work; instead, he used the hypothetical question posed to the VE to identify jobs Plaintiff could perform with the limitations imposed, and properly relied on the VE's testimony [Doc. 17 at PageID#: 87-88].

While Plaintiff correctly quotes from the applicable regulations, it is clear the ALJ was not assigning Plaintiff an RFC determination which would encompass a full range of light work. Instead, the ALJ determined Plaintiff could perform a reduced range of light work subject to the limitations he imposed. To that end, the ALJ posed a hypothetical question to the VE and specified that the individual would be in the light work category, but would have limitations as to occasional climbing, stooping, bending, kneeling, crouching, and crawling, and would need to be able to shift from sitting to standing at will (Tr. 17, 46). Indeed, in the decision, the ALJ wrote:

> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. *However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.* To determine the extent to which these limitations erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.

(Tr. 21).

A VE's testimony in response to a hypothetical is substantial evidence regarding the existence of jobs that the claimant can perform as long as the hypothetical question "accurately portrays [her] individual physical and mental impairments." *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical need not include all the claimant's

diagnoses, but should merely reflect the claimant's RFC (as previously determined by the ALJ) as well as her vocational factors of age, experience, and education. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).

I **FIND** nothing inconsistent or improper in the ALJ's determination that Plaintiff could perform a range of light work subject to specific limitations. The ALJ properly relied on the VE's response to a hypothetical question, which included such limitations, to find that jobs existed that Plaintiff could perform.

### C.      Plaintiff's Combined Impairments

In her second argument, Plaintiff asserts the ALJ's decision is not supported by substantial evidence because the medical evidence does not support the ALJ's RFC determination. In support of this argument, Plaintiff lists her impairments, recounts the medical evidence in the record from Dr. Blankenship and Dr. Smith, and quotes extensive portions of Plaintiff's testimony at the hearing. Plaintiff argues the ALJ failed to properly evaluate her pain in the context of these records and testimony. Plaintiff asserts she is never free of pain, which she rates as normally being at level seven on a 10-point scale, she has no energy and has to rest for up to four hours at a time, she has been diagnosed as a diabetic and may have the beginnings of diabetic neuropathy, she continues to experience low back pain, bilateral knee pain, and hip pain, she cannot stand or walk for more than 10 to 15 minutes at a time, she has to change position while sitting due to stiffness, and she needs assistance with grocery shopping and housework.

The Commissioner asserts the ALJ considered Plaintiff's impairments in combination, incorporated certain limitations in his RFC determination, and properly considered all of the medical evidence in the record, along with Plaintiff's subjective complaints of pain. The Commissioner also

13

asserts the ALJ found inconsistencies between Plaintiff's complaints of pain and the objective medical tests in the record, the results of which were normal or generally showed mild changes. Finally, the Commissioner asserts the ALJ was tasked with evaluating how the physical impairments and their symptoms could cause pain and, although he determined that Plaintiff's impairments would cause some symptoms, he found Plaintiff's testimony as to the intensity and persistence of the symptoms was not fully credible.

While Plaintiff cites to cases which set forth the standard by which pain is evaluated in the context of objective medical evidence, Plaintiff justification for the ALJ's allegedly improper evaluation of her pain comes directly from Plaintiff's own hearing testimony, which focused on a recounting of her conditions and subjective complaints of pain. Plaintiff does not specifically refer to any medical record that contains objective testing supporting the severity of her pain. Plaintiff's argument, therefore, appears to relate more to the ALJ's determination she was less than fully credible with respect to her complaints of pain, than it relates to an alleged defect in the ALJ's decisionmaking process regarding consideration of combined impairments. To address the stated argument, however, the ALJ noted that Plaintiff's obesity, hip disorder, knee disorder, degenerative disc disease, and plantar bursitis were all severe impairments, and discussed them in combination as follows:

> The undersigned also considered Section 1.00Q of the Listing of Impairments, which deals with the effect of obesity on impairments of the musculoskeletal system. This section provides that the combined effect of obesity with musculoskeletal impairments can be greater than the effect of each of the impairments considered separately. The record contains various references to claimant's morbid obesity. But there is no objective evidence to support a finding that there are additional and cumulative effects imposed by her obesity which make her musculoskeletal impairments of a listing level and/or significant erode her abilities to perform work activities.

14

(SSR 02-1p). Therefore, the undersigned finds the claimant's impairments singly or in combination with her obesity do not meet or medically equal criteria of Appendix 1, Subpart P, Regulations Part 404.

(Tr. 17).

As to Plaintiff's subjective complaints of pain, an ALJ must consider "the claimant's allegations of his symptoms. . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments related to complaints of pain are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding," and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference).

In determining the RFC, the ALJ recounted the objective medical evidence in the record, which consists primarily of the MRI of Plaintiff's knees, a CT scan of her spine, and an MRI of her spine, all which showed generally mild findings. The ALJ addressed Plaintiff's subjective complaints in the context of the objective medical evidence in the record and determined that while

15

Plaintiff's impairments could be expected to cause some of her symptoms, her statements about "the intensity, persistence and limiting effects of these symptoms" were not fully credible (Tr. 20). The ALJ did find Plaintiff credible to the extent she suffers some knee, foot, and back pain and, as a result, reduced the RFC to light work with a sit/stand option to address these concerns. The ALJ also found Plaintiff's assertions with respect to her ability to bend and stoop credible and limited her RFC accordingly to accommodate these limitations. The ALJ found that Plaintiff's testimony about her foot problems was inconsistent with statements to Dr. Smith about the inserts improving her foot pain and found that Plaintiff's testimony about her daily activities was inconsistent with her allegations of pain because Plaintiff was able to care for her daughter, shop for groceries, do housework with the help of her niece, and do laundry.

Plaintiff's reports of pain to Dr. Blankenship are simply that—subjective reports of pain—and are not objective evidence of conditions that would support the severity of the pain Plaintiff alleged. Although Plaintiff argues that objective evidence supports the severity of her conditions, the only objective tests available in Plaintiff's record are the above-referenced MRI and CT scans, which indicated mild problems. I **FIND** the ALJ properly considered the objective medical evidence in the context of all other evidence in the record. The ALJ did not ignore evidence that might support Plaintiff's subjective complaints of pain and he adequately explained his reliance on evidence in the record that was inconsistent with Plaintiff's complaints of pain. Therefore, I **FIND** the ALJ's determination as to Plaintiff's credibility is supported by the substantial evidence in the record and I **CONCLUDE** it is entitled to deference.

I **FIND** the ALJ properly considered all of Plaintiff's impairments and limitations, including her credible complaints of pain and her morbid obesity, in combination and separately, to determine

she did not meet or medically equaled any of the listings and to fashion an appropriate RFC.

### D. Rejection of Dr. Blankenship's Opinion

Plaintiff's third argument concerns the ALJ's decision to give the opinion of Plaintiff's treating physician no weight. Plaintiff extensively quotes from the applicable Social Security Ruling ("SSR") and regulations and asserts that Dr. Blankenship met all the criteria to mandate affording his opinion controlling weight. Plaintiff correctly asserts Dr. Blankenship was a treating source who had been treating Plaintiff consistently for several years in a long and continuing relationship, and correctly asserts his opinion was a "medical opinion" as defined by the regulations. Plaintiff next points out specific alleged deficiencies with respect to the ALJ's treatment of Dr. Blankenship's opinion. Plaintiff asserts the ALJ was incorrect when he stated that Dr. Blankenship's opinion was not supported by the objective medical evidence in the record, including his own treatment notes, because there are many examples of supporting evidence in Dr. Blankenship's notes. Plaintiff argues the ALJ's statement about inconsistencies between Dr. Blankenship's opinion and notes with respect to arthritis was incorrect because there are many references to osteoarthritis in his notes and Plaintiff's degenerative disc disease is a form of osteoarthritis. Plaintiff asserts it was error for the ALJ to accept the opinions of the state agency physicians over the opinion of Dr. Blankenship because they had never evaluated Plaintiff and had incomplete medical records. Plaintiff further notes the most recent state agency assessment was over two years prior to the hearing, while Dr. Blankenship's opinion was much more current.

The Commissioner argues that Dr. Blankenship's opinion of Plaintiff's abilities, which essentially opined that Plaintiff is disabled, is not a determination to which the ALJ must afford any weight; instead, it is within the ALJ's purview to make that determination. The Commissioner

asserts that Dr. Blankenship's opinion is not supported by any objective medical evidence and it is inconsistent with the record, such that the ALJ properly gave it no weight. Furthermore, the Commissioner argues that the opinions of the state agency physicians provide substantial evidence to support the ALJ's decision and that Plaintiff's testimony about her own activities undermines Dr. Blankenship's opinion of her abilities, but the ALJ gave Plaintiff the benefit of the doubt by limiting her to light work.

The law governing the weight to be given to a treating physician's opinion, often referred to as the treating physician rule, is settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*

*v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Id.* at 544, 547.

Here, the ALJ stated as follows with respect to Dr. Blankenship's assessment of Plaintiff's physical limitations:

> The medical opinion of Dr. Blankenship is rejected here and given no probative weight because his opinion is not supported by the objective medical evidence in the file, including his own treatment notes. For example, Dr. Blankenship stated that cold temperatures increase the claimant's arthritic pain, however, medical records from Dr. Blankenship do not contain a diagnosis of arthritis. In addition, medical records dated April 16, 2007 indicate no spasms in the claimant's cervical or lumbar spine. There was also no scoliosis, kyphosis, or lordosis. Finally, diagnostic studies do not support the level of limitation offered by Dr. Blankenship.

(Tr. 20).

As a preliminary matter, any assertion by Dr. Blankenship that Plaintiff is disabled is a conclusion reserved to the ALJ and is therefore not entitled to any particular weight. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010); *see also* 20 C.F.R. § 404.1527(e)(1). Plaintiff correctly argues that Dr. Blankenship's notes contain references to osteoarthritis; such references appear in some–but not all–of his treatment notes.[2] Thus, as argued by Plaintiff, it was incorrect for the ALJ to state there was no diagnosis of arthritis, and this reason, if standing alone, was not a "good reason" for rejecting Dr. Blankenship's opinion.

Nonetheless, the ALJ provided other good reasons for affording Dr. Blankenship's opinion

---

[2] However, it should be noted that it is unclear when this diagnosis was made, how it was reached, and how severe any arthritis was, especially given the mild changes reflected in Plaintiff's MRI and CT scans.

no weight, as the ALJ pointed out the opinion was contradicted by the opinions of the two state agency physicians and was not supported by objective medical evidence. Although Dr. Blankenship's opinion was closer to the time of the hearing than the opinions of the state agency physicians, there is no indication in the record that Plaintiff's conditions changed appreciably in the intervening time. Her visits with Dr. Blankenship throughout the rest of 2007 and 2008 generally followed the same basic structure and the same complaints of hypertension, B-12 deficiency, and occasional complaints of hip and knee pain (Tr. 313-17, 319-21, 326-30, 379-99, 408-09, 411-12, 414-19, 421-22). The only additional testing in the record after Dr. Gregory's assessment is Plaintiff's bone density test in January 2009, which showed no statistically significant bone loss in her lumbar spine or left femur, and additional records from Dr. Smith that document orthotic adjustments and that Plaintiff was progressing well (Tr. 368, Doc. 13-1).[3]

In connection with Dr. Blankenship's opinion, Plaintiff also argues the ALJ should have found that Plaintiff's obesity resulted in a failure to ambulate effectively such that it would medically equal Listing 1.02A and result in a presumptive finding of disability. The Commissioner contends that Plaintiff's reference to Listing 1.02 should be disregarded because Plaintiff failed to present any argument on this issue. Plaintiff's argument with respect to Listing 1.02A is essentially based on the ALJ's failure to afford weight to Dr. Blankenship's opinion. The ALJ did consider Listing 1.02 in his decision and, as discussed above, he considered all of Plaintiff's impairments in combination, including her obesity, to determine she did not meet or medically equal any of the listings. The ALJ specifically noted there was no evidence from any treating or examining

---

[3] The records from Dr. Smith dated August 14, 2007 and August 29, 2007 do not appear to be included in the record.

physicians that would establish the severity of impairment required for Plaintiff to meet Listing 1.02 (Tr. 17).

Plaintiff also argues that Dr. Blankenship's opinion, along with Plaintiff's credible testimony, would have resulted in a finding of disability, and the ALJ erred in not asking the VE to consider any pain in his hypothetical questions. The ALJ noted in his decision that he did not consider Plaintiff's testimony with respect to her pain to be entirely credible (Tr. 20). The ALJ found that Plaintiff would experience some knee, foot, and back pain, and he determined light work with a sit/stand for comfort option would address the extent of the pain complaints he found to be credible (Tr. 20). The ALJ posed a question to the VE that outlined the limitations he imposed as a result of the testimony he found to be credible, and I **FIND** the hypothetical question posed to the VE adequately outlined Plaintiff's physical limitations given the ALJ's properly supported credibility determination and good reasons for rejecting Dr. Blankenship's opinion. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

I **FIND** the ALJ gave sufficient good reasons for rejecting the opinion of Dr. Blankenship and, after considering all of Plaintiff's arguments, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

## V.  CONCLUSION

Having carefully reviewed the administrative record and arguments, I **RECOMMEND** that:[4]

(1)  Plaintiff's motion for judgment on the administrative record [Doc. 12] be **DENIED**.

(2)  The Commissioner's motion for summary judgment [Doc. 16] be **GRANTED**.

(3)  The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order.  *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).